# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY RAYMOND KLING,<br><br>Defendant. | No. CR06-3007-MWB<br><br>**ORDER FOR PRETRIAL RELEASE** |

On May 23, 2006, this matter came on for detention hearing before the undersigned. Assistant U.S. Attorney John Lammers appeared on behalf of the plaintiff (the "Government"). The defendant Larry Raymond Kling appeared in person with his attorney, F. David Eastman. The Government offered the testimony of FBI Special Agent Traci Dow-Wyatt. Kling testified on his own behalf.

The court must determine whether any condition or combination of conditions will reasonably assure the defendant's appearance as required, as well as the safety of any other person and the community, in deciding whether to grant the Government's motion for detention. 18 U.S.C. § 3142(e). A defendant may be detained based on a showing of either dangerousness or risk of flight; it is not necessary to show both. *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), *cert. denied*, 479 U.S. 950, 107 S. Ct. 436 (mem.), 93 L. Ed. 2d 385 (1986); *United States v. Garcia*, 801 F. Supp. 258, 260 (S.D. Iowa 1992).

The court is to presume that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community if the court finds there is probable cause to believe the defendant committed an offense involving a minor victim under 18 U.S.C. § 2423. *See* 18 U.S.C. § 3142(e). This presumption is subject to rebuttal by the defendant. *Id*. The probable cause element

of section 3142(e) which triggers the rebuttable presumption of risk of flight and danger to the community may be established through evidence presented at the detention hearing of an offense which is subject to the rebuttable presumption. *See United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992); *United States v. Dorsey*, 852 F.2d 1068, 1069 (8th Cir. 1988). A grand jury's indictment provides the probable cause required under 18 U.S.C. § 3142(e) to trigger the rebuttable presumption of risk of flight and danger to the community. *See United States v. Garcia*, 801 F. Supp. 258 (S.D. Iowa 1992) (citations omitted).

In the present case, Agent Dow-Wyatt testified Kling engaged in a sexual relationship with a minor victim, verified in part by videotapes and Polaroid photographs, and by Kling's own admissions. The evidence indicates the minor victim is the daughter of a woman Kling had been seeing for some time. The victim's diary indicates she and Kling started out as friends, she developed a crush on him, and the relationship quickly escalated into sexual activity. Agent Dow-Wyatt testified Kling told her the victim was fourteen years of age when they first had sexual contact. The agent further testified that a "no contact" order was entered in an Iowa state court in June 2005, prohibiting Kling from coming into contact with the victim or her minor sister.

The agent testified Kling had told her that he and the minor victim engaged in sexual contact in November 2005, several months after entry of the "no contact" order. She reiterated the November 2005 date upon questioning by the court. However, on cross-examination by Kling's attorney, the agent was less clear about the dates of the alleged sexual contact. At the court's direction, the agent retrieved and consulted her notes to refresh her recollection. She then testified Kling told her the videotapes and photographs of the victim were taken in early 2005. According to her, Kling stated he was aware of the "no contact" order. The agent found nothing in her notes to substantiate her previous

testimony regarding any sexual relationship between the victim and Kling from entry of the "no contact" order through November 2005.

The agent also testified that at the time Kling's residence was searched in February 2006, officers found a note stuck to Kling's computer that contained an e-mail address for the victim, as well as instructions that directed the victim to perform certain sexual acts in front of a video camera.

Kling testified the victim told him her birthdate was in November 1987. When he first started talking with the victim, she told him she was sixteen years of age. Prior to his arrest on the current charges, he believed the victim had turned eighteen years of age in November 2005. He stated he first became aware that the victim was younger than she had told him at the time of his arrest on the current charge. Prior to his arrest, he believed the "no contact" order had terminated as to the victim in November 2005, when she became eighteen. However, he has had no personal contact with the victim since entry of the "no contact" order. He has continued to see the victim's mother from time to time, but never when the victim or her sister were present.

The evidence elicited at the hearing indicates that at some point after Kling's arrest on the current charges, he made arrangements for his sister to deliver a poem to the victim that he had written for her. The court's review of the "no contact" order indicates the order is not clear as to whether it prohibits all forms of contact, or merely personal contact, with the victim. Thus, the court makes no finding that delivery of the poem to the victim by a third party does, or does not, constitute a violation of the "no contact" order.

The court is disturbed by the FBI agent's testimony in several respects. First, the dates when Kling and the victim had sexual contact obviously were critical to a determination of whether Kling intentionally violated the "no contact" order – an important consideration in this court's determination of whether Kling would pose a danger to the victim if he were placed on pretrial release. Despite the court's statements regarding the

3

importance of the dates, the agent continued to testify that she thought Kling indicated the relationship took place in November 2005. Only after the court directed the agent to retrieve and consult her notes did she provide accurate dates regarding when the video and photographic images were made of the victim. She also testified there was nothing in her notes about an encounter in November of any year, and she did not testify that her notes indicated Kling knew the victim's true age at the time of their relationship.

Secondly, the agent testified at length about the practices of pedophiles, and she referred to Kling as a pedophile. On the evidence before the court in this proceeding, it is far less than clear that Kling fits the definition of a pedophile, which the Oxford English Dictionary defines as "[a]n adult who is sexually attracted to children." In searching Kling's home and computer, officers found no evidence of other child pornography, other inappropriate communications with children, or the like. Unlike the majority of cases of this kind that come before the court, here, there also is no evidence that Kling went in search of a minor with whom to engage in a sexual relationship. On this record, it appears Kling may have had an inappropriate relationship only with this minor victim. While not reducing the seriousness of Kling's conduct, these facts mitigate against Kling's posing a danger to other minors in the community if he were placed on pretrial release.

In determining whether conditions of release exist that would ensure Kling's appearance as required and the safety of the community, the court considers four factors. First, the court considers the nature and circumstances of the crime. In this case, "the nature of the crime charged -- sexual activity with a minor -- weighs heavily against release." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Second, the court considers the strength of the Government's case, which appears to be strong. Both

physical evidence and Kling's admissions tie him to the crime charged.[1] This factor also weighs in favor of detention.

Third, the court considers Kling's history and characteristics, including his ties to the community, employment, and past conduct. Kling has a very limited criminal history. His only prior offense is one for contributing to the delinquency of a minor, a charge that was dropped. The evidence before the court indicates the charge arose from an incident in which Kling and, apparently, the victim's mother were involved in providing alcohol to the minor victim in this case. Kling has a wife from whom he is separated, and children, who live with his estranged wife by the parties' mutual agreement. There have never been any allegations that Kling has acted inappropriately with his children. If placed on pretrial release, Kling would live with one of his sisters in Eagle Grove, Iowa, and he has employment prospects. The court finds this factor weighs in favor of pretrial release.

Fourth, the court considers "the seriousness of the danger to the community or to an individual." *Id*. (citing 18 U.S.C. § 3142(g)). As the *Abad* court noted:

> "In a presumption case such as this, a defendant bears a limited burden of production – not a burden of persuasion --to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id*.

*Abad*, 350 F.3d at 797. In weighing this factor, the court returns to the troubling nature of the FBI agent's testimony that contained guesses about dates, inaccurate recollections of what Kling allegedly told the officers, and what can only be termed as speculation, on

---

[1] Notably, the court is not considering whether the relationship was consensual, a factor the Eighth Circuit Court of Appeals has held is inappropriate in the context of the detention determination. *See Abad*, 350 F.3d at 798.

5

this record, about Kling's character. The court finds these matters detract from the agent's credibility.

On the other hand, the court finds Kling's testimony to be credible regarding his knowledge of the "no contact" order, and his lack of personal contact with the victim since the order was entered. The court notes the Government made much of the fact that despite claiming he thought the "no contact" order no longer applied to the victim after November 2005, Kling nevertheless went through his sister to deliver a poem to the victim, rather than calling the victim directly. Kling stated telephone calls from the jail are restricted and must be made as collect calls. He did not attempt to make a collect call to the home of the victim's father – something the court finds quite understandable under the circumstances. He also did not attempt to make a collect call to the victim's cell phone, but he testified he did not, and does not, know the number.

The court finds Kling has come forward with credible evidence that he does not pose an ongoing danger to the victim. On this record, he has not had personal contact with her in nearly a year, and there is no evidence he would fail to abide by conditions of release that prevent him from having any type of contact with her, even through third parties.

Considering the evidence as a whole, the court finds, even in light of the presumption favoring detention, that conditions of release can be fashioned that will guarantee Kling's appearance as required and the safety of both the victim and the community. Accordingly, the defendant will be placed on pretrial release pursuant to the terms of a forthcoming Order Setting Conditions of Release.

The Government asked the court to stay any ruling that places Kling on pretrial release to allow the Government to appeal. The request is **granted in part**. The court's ruling is **STAYED until 3:00 p.m. Thursday, May 25, 2006.** The stay will expire unless before that time, the Government has filed an appeal from this order, a brief supporting

the appeal, and a certification that it has ordered a transcript of the detention hearing. If the Government has satisfied all of these requirements, the stay will be extended until the district court rules on the appeal.

**IT IS SO ORDERED.**

**DATED** this 24th day of May, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT