# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY RAYMOND KLING,<br><br>Defendant. | No. CR06-3007-MWB<br><br>**ORDER CONCERNING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I. INTRODUCTION AND BACKGROUND

### A. *Procedural Background*

On January 19, 2005, a two count indictment was returned against defendant Larry Raymond Kling charging him with using, persuading, and inducing a person under the age of eighteen to engage in sexually-explicit conduct for the express purpose of producing visual depictions of that conduct, "namely four (4) TDK videotapes, which had previously been transported in interstate and foreign commerce," in violation of 18 U.S.C. § 2251(a) and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Defendant Kling has filed three motions to suppress. In his first motion to suppress, defendant Kling seeks to suppress any statements he made to law enforcement during the execution of the search warrant at his residence. Defendant Kling contends that he was subjected to a custodial interrogation at his residence, in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). In his second motion to suppress, defendant Kling seeks to suppress all of the evidence seized by law enforcement officers during a search of his residence. Defendant Kling contends that the search warrant was not based

on probable cause. Defendant Kling also contends that the evidence should be suppressed because law enforcement officers violated Federal Rule of Criminal Procedure 41(f) when they failed to provide him with a complete copy of the search warrant prior to initiating the search. In his third motion to suppress, defendant Kling seeks to prevent the government from introducing at trial certain explicit movies and photographs of the victim that were seized during the search of Kling's residence. Kling offers to stipulate that he took the explicit photographs and movies, and they show the alleged victim in a state of undress and engaging in sex acts with defendant Kling. As such, Kling argues this evidence should be excluded because the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

Defendant Kling's motions to suppress were referred to United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). On July 12, 2006, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Kling's motions to suppress all be denied. Judge Zoss concluded that, with respect to defendant Kling's first motion to suppress, a reasonable person in Kling's situation would not have believed he was in custody, nor would he have felt compelled to answer questions. Therefore, because defendant Kling was not subjected to custodial interrogation, there was no violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Judge Zoss further concluded that, with respect to defendant Kling's second motion to suppress, the warrant application contained ample probable cause to support a search warrant for defendant Kling's computer and his residence. Judge Zoss also rejected defendant Kling's claim that the evidence should be suppressed because law enforcement officers violated Federal Rule of Criminal Procedure 41(f), finding that the agents' failure to provide him with a copy of the warrant's attachments would not warrant suppression of the evidence since defendant Kling has not demonstrated that he was prejudiced in any way by the agents' failure to

provide him with the warrant prior to the search and has failed to show that the agents deliberately disregarded the requirements of Rule 41(f). Finally, with respect to defendant Kling's third motion to suppress, Judge Zoss found that the probative value of the evidence outweighed any danger of unfair prejudice to defendant Kling. Therefore, Judge Zoss recommended that defendant Kling's three motions to suppress be denied. Neither the government nor defendant Kling have filed objections to Judge Zoss's Report and Recommendation.

### B. *Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> On January 19, 2006, FBI agents David Larsen and Traci Dow-Wyatt went to the Eagle Grove, Iowa, Police Department to discuss the pending execution of a search warrant at Kling's residence. The FBI agents were seeking the least obtrusive method to gain entry into Kling's residence for purposes of executing the warrant. Eagle Grove Police Chief Thomas Anderson stated he was Kling's neighbor, and he offered to assist the agents. Chief Anderson walked across the street from City Hall to Kling's place of employment. He told Kling he would like to speak with him, and asked if Kling had a moment to step across the street to City Hall. Kling agreed, and he and Chief Anderson walked back over to City Hall.
>
> Kling was met at City Hall by the two FBI agents, who displayed their identification and held up the search warrant. They advised Kling they had a warrant to search his residence, and asked if he would unlock the door to admit them so they would not have to enter the residence forcibly. Kling agreed to open the residence. The agents told Kling that either they would drive him to the residence, or he could drive his own vehicle but he would have to be accompanied by an agent to ensure he did not attempt to gain access to his home computer

remotely. Kling drove his vehicle to his residence, accompanied by Agent Dow-Wyatt. The drive from City Hall to Kling's residence took approximately three minutes. When they arrived at the residence, Kling unlocked the door. The agents then asked him to wait outside while they did a protective sweep of the residence. Two other agents were already at the house waiting to begin the search, and a uniformed Eagle Grove officer also was present at the scene. After the agents completed the protective sweep of the house, Kling went inside with Agents Larsen and Dow-Wyatt, while the other two agents began the search of the residence. The Eagle Grove officer waited by the front door.

The agents asked Kling if he would mind answering some questions, and Kling agreed to do so. He and the agents sat down in the living room, where the agents proceeded to question Kling for about ninety minutes. Kling did not volunteer information, but he responded to all questions the agents asked of him. During the interview, Kling asked for, and received, permission to smoke, to go to the bathroom, and to get a cold drink from the kitchen. No one accompanied Kling when he went to the bathroom or to the kitchen. Throughout much of the interview, a uniformed Eagle Grove officer stood next to the front door of the residence.

It is undisputed that while the agents were at Kling's residence, he was never arrested or placed in handcuffs, no officer ever drew a weapon, and no officer ever advised Kling of his *Miranda* rights.

When the agents finished searching Kling's residence, all of the FBI agents and local officers left the residence, while Kling remained behind in his home. Agent Larsen left a copy of the warrant at Kling's residence. Kling claims Agent Larsen only left a copy of the first page of the warrant, with none of the attachments that identified what property the agents were allowed to search or to seize, and a carbon copy of a

receipt for property seized at the residence. (*See* Defendant. Ex. A) Agent Larsen disputes Kling's allegation, and testified he left a complete copy of the search warrant, including all attachments and a copy of the application for the warrant. It is undisputed that Kling never asked to see a copy of the warrant.

According to the agents, they implied throughout the interview that Kling was free to return to work if he wanted to, although no officer expressly told Kling he did not have to answer questions or he was free to leave. When Kling asked if he could go to the bathroom or get a cold drink, they responded with something like, "Sure, it's your house." Agent Larsen said that at one point near the end of the interview, Kling made a statement that he would offer the agents a beer, but he knew they were "on the clock." Agent Larsen testified the agents made it clear they were asking for Kling's cooperation, rather than directing him to respond to questions.

Kling tells a different story. He testified he did not feel free to leave his residence. He stated a uniformed officer stood by the door throughout the interview, there were two agents sitting with him, and two agents were searching his house. He felt intimated [sic], to the point that he believed it was necessary to ask permission before he left the room to go to the bathroom or the kitchen.

Report and Recommendation at pp. 4-6.

## II. LEGAL ANALYSIS

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of

> those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*).

As the court noted above, no party has filed an objection to Judge Zoss's Report and Recommendation, and it appears to the court upon review of Judge Zoss's findings and conclusions, that there is no ground to reject or modify them. Therefore, the court **accepts** Judge Zoss's Report and Recommendation of July 12, 2006, and orders that defendant Kling's three motions to suppress are **denied**.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA